IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| WAYNE AND ROBERT THAMES, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | CIVIL ACTION 13-0063-WS-N |
| ) | |
| WOODMEN OF THE WORLD ) | |
| LIFE INSURANCE SOCIETY, ) | |
| ) | |
| Defendant. ) | |

ORDER

This matter comes before the Court on Plaintiffs' Motion to Alter, Amend or Vacate (doc. 17). The Motion has been briefed and is now ripe for disposition.[1]

I. Background.

*A. The Arbitration Proceedings and the Award.*

This is an action to vacate an arbitrator's award, ostensibly brought pursuant to 9 U.S.C. § 10 and Alabama law.[2] The underlying dispute involves claims brought by plaintiffs, Wayne

---

[1] Notably, the briefing schedule authorized plaintiffs to file a reply brief on or before June 4, 2013. (Doc. 16.) Although defendant timely filed a response, plaintiffs elected not to submit a reply. In so doing, they have waived the opportunity to present any counterarguments in rebuttal to defendant's contentions.

[2] Plaintiffs' reliance on Alabama law is unavailing. The relevant arbitration agreement includes the following provision: "These proceedings and any judicial review of awards under these rules shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*" (Doc. 18, Exh. C, § 32(A).) As a general proposition, "courts must place arbitration agreements on an equal footing with other contracts … and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, --- U.S. ----, 131 S.Ct. 1740, 1745, 179 L.Ed.2d 742 (2011). Indeed, the Federal Arbitration Act "demands that private agreements to arbitrate be upheld and that the parties' choice of substantive law governing those arbitrations generally be respected." *Foulger-Pratt Residential Contracting, LLC v. Madrigal Condominiums, LLC*, 779 F. Supp.2d 100, 110 (D.D.C. 2011); *see also BioMagic, Inc. v. Dutch Brothers Enterprises, LLC*, 729 F. Supp.2d 1140, 1142 (C.D. Cal. 2010) (recognizing that "arbitration is a matter of choice" and that parties drafting agreements may choose whether to have their arbitration governed by state
(Continued)

and Robert Thames ("the Thameses"), against defendant, Woodmen of the World Life Insurance Society ("Woodmen"). In particular, the Thameses sought to recover from Woodmen for the undisputed misappropriation of certain insurance premium funds they paid to non-party Scott Dees, who was Woodmen's local field representative, during the period of 2005 to 2008.[3] Plaintiffs asserted claims against Woodmen for vicarious liability (on the theory that Dees was Woodmen's agent or employee), negligence, fraud/fraudulent concealment, breach of contract, and conversion.

As prescribed by the applicable arbitration agreement, the parties submitted their dispute to the American Arbitration Association ("AAA"), which appointed a Birmingham attorney named Ben F. Beckham (the "Arbitrator") as arbitrator.[4] After a number of conferences, discovery proceedings, and motion practice, the proceedings culminated in an arbitration hearing conducted on September 25 and 27, 2012.[5] During this hearing, the Arbitrator received testimony from five witnesses, as well as dozens of exhibits for both claimants and respondent. The hearing was not closed until October 31, 2012, to allow for submission of post-hearing briefs. Both sides were represented by counsel throughout the arbitration process. Of relevance to the instant proceeding, Woodmen's attorneys were Walter T. Gilmer, Jr., and Archibald Reeves, IV, both of the McDowell Knight firm in Mobile, Alabama.

---

rules or by the FAA). Having designated the FAA as governing both arbitration proceedings and judicial review of awards, the parties are contractually bound to adhere to that designation. Plaintiffs advance no argument to the contrary. Therefore, the Court will look to the FAA, and not to the Alabama statute cited by plaintiffs, in assessing whether the arbitrator's award must or should be vacated, altered or modified.

[3] In a curious twist, the Thameses were related to Dees by marriage during the very time when he was stealing from them. The record reflects that Dees was married to plaintiff Robert Thames' sister (who was plaintiff Wayne Thames' daughter) from 1989 until 2011. So Dees misappropriated insurance premiums submitted by his own brother-in-law and father-in-law. Another odd coincidence in this case is that Wayne Thames had himself previously worked as a Woodmen field representative.

[4] The record reflects that Beckham had been an arbitrator for more than 15 years, and had worked exclusively as a AAA arbitrator for eight to ten years. (Doc. 18, Exh. B at 7.)

[5] The entire 452-page arbitration hearing transcript in the court file; however, the undersigned has limited its review to specific excerpts cited by the parties. (*See* doc. 1, Exh. A.)

On November 30, 2012, the Arbitrator issued a 13-page written Award in which he found for Woodmen and against the Thameses on all claims. (Doc. 18, Exh. A.) In summary, the Award included the following determinations: (i) Dees was an independent contractor whose misappropriation of funds was for wholly personal reasons, such that Woodmen could not be vicariously liable; (ii) the Thameses' negligence claim failed because of contributory negligence (they admitted to exercising poor business judgment in their dealings with Dees and to receiving annual reports that enabled them to determine that Dees was misappropriating their premium funds) and timeliness (claim was governed by two-year statute of limitations yet the Thameses filed an arbitration demand more than three years after incurring the complained-of losses); (iii) the Thameses' fraud claims failed for lack of reasonable reliance, inasmuch as they admitted to using poor judgment (*i.e.*, they knew better than to make premium payment checks payable to Dees and acknowledged not adequately protecting their own interests) and they received annual reports that showed their premium payments to Dees were not reaching Woodmen; (iv) the Thameses failed to present sufficient evidence that Woodmen breached any contract with them, inasmuch as Local Lodge 1057 is independent and autonomous, Woodmen did not control Lodge 1057's checking account, Woodmen received no complaints that Dees was misappropriating premium funds until 2011, Woodmen would not have known from Lodge 1057's reports and audits that Dees was misappropriating policyholder funds, the primary responsibility rested with the Thameses to verify that Woodmen was receiving their premium payments, and there was not sufficient and creditable evidence that Woodmen knew or should have known prior to 2011 that Dees was misappropriating their premium payments and Lodge 1057's checking account funds; and (v) Woodmen could not have converted premium funds that it never received, and such conversion claim was untimely, in any event. (Doc. 18, Exh. A at 3-11.)

In light of these and other written findings, the Arbitrator concluded the Award as follows: "The evidence presented was insufficient as a matter of law for Claimants to be entitled to any recovery in this matter. Based on the evidence submitted and the applicable law, Claimants are not entitled to any recovery in this matter, and Respondent has no liability to Claimants in this matter." (*Id.* at 12.)

### B. *Plaintiffs' Motion to Vacate the Award.*

On December 28, 2012, less than 30 days after entry of the Award, the Thameses (by and through counsel) filed a Notice of Appeal in the Circuit Court of Monroe County, Alabama. On

February 8, 2013, Woodmen removed this action to this District Court.[6] Upon transfer to the undersigned's docket in April, this Court entered an Order (doc. 13) directing the Thameses to file an Amended Motion to Alter, Amend or Vacate the Arbitration Award, with appropriate record citations and legal analysis. Plaintiffs' ensuing request for discovery was denied based on well-settled authority and their failure to identify either law or facts showing that discovery was warranted in these post-arbitration proceedings. (*See* doc. 15.)[7]

On May 16, 2013, plaintiffs filed their amended Motion to Alter, Amend or Vacate (doc. 17). That Motion identifies three grounds for setting aside the Award. First, plaintiffs assert that the Arbitrator violated 9 U.S.C. § 10(a)(3) by "refus[ing] to order the production of an audit conducted by Woodmen of the World showing the extent of Mr. Dees' theft after being provided with proof of said audit" and by "refusing to allow material evidence and testimony showing that Woodmen of the World has an extensive history of negligent hiring and supervision of its agents in Alabama." (Doc. 17, at 2, 4.) Second, plaintiffs maintain that the Arbitrator violated 9 U.S.C. § 10(a)(2) by "fail[ing] to disclose a relationship with defendant's counsel." (*Id.* at 5.) Third,

---

[6] Federal subject matter jurisdiction is not automatically conferred by virtue of the Federal Arbitration Act. *See, e.g., Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 841 n.7 (11th Cir. 2011) ("While the FAA provides the grounds for vacatur of an arbitration award, it does not serve as an independent ground for jurisdiction in federal courts."). Here, removal jurisdiction was properly predicated on 28 U.S.C. § 1332, inasmuch as the Notice of Removal (doc. 1) shows the Thameses to be of diverse citizenship from Woodmen and the Thameses' claims were plainly for an amount in excess of the $75,000 jurisdictional minimum (as evidenced by their demand for, *inter alia*, $91,375.34 in lost premiums and $500,000 in punitive damages).

[7] Plaintiffs were given a full and fair opportunity to make such a showing. On April 12, 2013, the undersigned entered an Order (doc. 15) explaining that post-arbitration discovery is disfavored in the law, and inviting plaintiffs to lay a proper predicate for why it might be appropriate in this case. Plaintiffs did not respond; therefore, they cannot be heard to complain now that they were denied discovery to which they were reasonably entitled in order to prove up their Motion to Vacate. At any rate, where a party fails to allege a sufficient factual basis to support claims of vacatur, the district court is not required to hold a hearing or allow discovery as a fishing expedition for evidence of arbitrator bias or misconduct. *See Aviles v. Charles Schwab & Co.*, 2011 WL 2938020, *3 (11th Cir. July 20, 2011); *O.R. Securities, Inc. v. Professional Planning Associates, Inc.*, 857 F.2d 742, 748 (11th Cir. 1988) (party seeking vacatur "had the burden to set forth sufficient grounds to vacate the arbitration award in his moving papers," and Rule 8 notice-pleading rules "do not apply to a proceeding to vacate an arbitration award"). That is precisely the case here.

plaintiffs contend that the Arbitrator violated 9 U.S.C. § 10(a)(2) by "refus[ing] to give credence to the evidence presented against Woodmen" showing breach of contract by non-compliance with company procedures and guidelines, "thus further demonstrating his level of partiality." (*Id.* at 7.)[8] Defendant has filed a response (doc. 18) denying that plaintiffs are entitled to relief on any of these grounds.

## II. Analysis.

### A. *Legal Standard for Vacatur of Arbitration Award.*

"After arbitration is complete, judicial review of the arbitration process and of the amount of the award is narrowly limited." *Booth v. Hume Pub., Inc.*, 902 F.2d 925, 932 (11th Cir. 1990). Indeed, "[b]ecause arbitration is an alternative to litigation, judicial review of arbitration decisions is among the narrowest known to the law." *AIG Baker Sterling Heights, LLC v. American Multi-Cinema, Inc.*, 508 F.3d 995, 1001 (11th Cir. 2007) (citation and internal quotation marks omitted). The Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* ("FAA"), "imposes a heavy presumption in favor of confirming arbitration awards; therefore, a court's confirmation of an arbitration award is usually routine or summary." *Cat Charter, LLC v. Schurtenberger*, 646 F.3d 836, 842 (11th Cir. 2011) (citations and internal quotation marks omitted); *see also AIG Baker*, 508 F.3d at 999 (FAA "presumes that arbitration awards will be confirmed") (citations omitted).[9]

---

[8] Near the end of their Motion to Vacate, plaintiffs state that Woodmen was "guilty of intimidating the Plaintiff's witness, Annie Hill." (Doc. 17, at 7.) However, plaintiffs neither identify record evidence to support such a contention nor explain how such an allegation, if proven, might entitle them to relief from the Award under the FAA. Plaintiffs place this argument under a heading that "The Arbitrator Showed Paritality [*sic*] and Corruption in Disregarding and Falsely Labeling the Evidence." (*Id.*) But the allegations about Annie Hill are not probative of corruption or partiality by the Arbitrator. At any rate, plaintiffs' attorneys admitted to the Arbitrator that they had failed to subpoena Hill as a witness. (Doc. 18, Exh. B at 340.) Thus, any detriment that the Thameses may have suffered from Hill's failure to testify at the arbitration hearing is directly traceable to their failure to subpoena her, rather than to any witness intimidation or strong-arm tactics of Woodmen. That omission negates any suggestion (had plaintiffs articulated same) that vacatur of the Award is warranted on a theory that Woodmen obtained it through corruption, fraud, witness tampering or the like. In light of the aforementioned defects, the Court will not consider this allegation further because, as presented, it does not bolster the Motion to Vacate.

[9] The narrowness of judicial review of arbitration awards is rooted in sound policy considerations. After all, "[a]rbitration's allure is dependent upon the arbitrator being the last (Continued)

By its terms, the FAA provides that a federal court "may make an order vacating the award upon the application of any party to the arbitration (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators …; (3) where the arbitrators were guilty of misconduct …in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a). Although vacatur may be had under these four statutory scenarios, such review "is circumscribed, as arbitrators do not act as junior varsity trial courts where subsequent appellate review is readily available to the losing party." *Cat Charter*, 646 F.3d at 842-43 (citation and internal quotation marks omitted).

"The burden is on the party requesting vacatur of the award to prove one of these four bases." *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1289 (11th Cir. 2002). And the law is now "clear that the statutory grounds justifying vacatur found in 9 U.S.C. § 10(a) are exclusive." *Cat Charter*, 646 F.3d at 842 n.10. "The FAA does not permit courts to roam unbridled in their oversight of arbitration awards." *Scott v. Prudential Securities, Inc.*, 141 F.3d 1007, 1014 (11th Cir. 1998) (citation and internal quotation marks omitted); *see also Southern Communications Services, Inc. v. Thomas*, --- F.3d ----, 2013 WL 3481467, *4 (11th Cir. July 12, 2013) (award cannot be vacated merely because "an arbitrator behaves in manifest disregard of the law" or reaches an "incorrect legal conclusion," but is subject to vacatur only on "exceedingly narrow" statutory grounds).

### B. *Section 10(a)(3) Review.*

Plaintiffs' first asserted basis for requesting vacatur of the Award is that the Arbitrator committed misconduct by "refus[ing] to order the production of an audit conducted by Woodmen of the World showing the extent of Mr. Dees' theft." (Doc. 17, at 2.) Plaintiffs explain that this evidence was relevant because it "would show the total amount of loss by

---

decision maker in all but the most unusual cases. The more cases there are, like this one, in which the arbitrator is only the first stop along the way, the less arbitration there will be." *B.L. Harbert Int'l, LLC v. Hercules Steel Co.*, 441 F.3d 905, 913 (11th Cir. 2006). Thus, the FAA is designed specifically to discourage arbitration losers from running to federal court for a do-over.

Wayne and Robert Thames and the date of these losses," and because the audit "could definitively show the true amount of loss of the plaintiffs." (*Id.*) Plaintiffs also ascribe misconduct to the Arbitrator "in refusing to allow material evidence and testimony showing that Woodmen of the World has an extensive history of negligent hiring and supervision of its agents in Alabama." (*Id.* at 3.) According to plaintiffs, this evidence "show[s] a pattern of negligent hiring and supervision" and would have bolstered their negligence claims. (*Id.* at 5.)

### 1. Section 10(a)(3) Standard.

The FAA authorizes vacatur of arbitration awards "where the arbitrators were guilty of misconduct … in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." 9 U.S.C. § 10(a)(3). Judicial review under § 10(a)(3) is narrow, inasmuch as "[a]rbitrators enjoy wide latitude in conducting an arbitration hearing, and they are not constrained by formal rules of procedure or evidence." *Rosensweig v. Morgan Stanley & Co.*, 494 F.3d 1328, 1333 (11th Cir. 2007) (citation and internal quotation marks omitted). Indeed, courts have emphasized that this subsection does not warrant vacatur where an arbitrator merely made an erroneous discovery or evidentiary ruling; rather, a plaintiff must show that the arbitrator's handling of these matters was in bad faith or so gross as to amount to affirmative misconduct, effectively depriving the plaintiff of a fundamentally fair proceeding. *See, e.g., Scott*, 141 F.3d at 1016 ("a mere difference of opinion between the arbitrators and the moving party as to the correct resolution of a procedural problem will not support vacatur under section 10(a)(3)").[10]

---

[10] *See also United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 40, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) (FAA's misconduct requirement means that award should be set aside based on arbitrator's erroneous disallowance of evidence only when such error was "in bad faith or so gross as to amount to affirmative misconduct"); *Questar Capital Corp. v. Gorter*, 909 F. Supp.2d 789, 816 (W.D. Ky. 2012) ("not every failure to receive evidence constitutes misconduct under § 10(a)(3); instead, the question is simply whether a party was deprived of a fundamentally fair proceeding"); *Wells Fargo Advisors, LLC v. Watts*, 858 F. Supp.2d 591, 599 (W.D.N.C. 2012) ("The fact that Watts disagrees with the various discovery rulings is not a ground for vacatur. Rather, the panel's discovery rulings may not be overturned unless they were in bad faith or so gross as to amount to affirmative misconduct."); *Marshall & Co. v. Duke*, 941 F. Supp. 1207, 1211 (N.D. Ga. 1995) (section 10(a)(3) "does not … invite hindsight evaluations of the correctness of the judgment of an arbitration panel in managing the presentation of evidence during an arbitration," because arbitrators have "wide latitude in conducting an arbitration hearing") (citation omitted).

Furthermore, even a showing of misconduct (without more) does not suffice, because § 10(a)(3) also includes a prejudice element that the party petitioning for vacatur must satisfy. *See Rosensweig*, 494 F.3d at 1333 ("[A] federal court may vacate an arbitrator's award only if the arbitrator's refusal to hear pertinent and material evidence prejudices the rights of the parties to the arbitration proceedings.") (citation omitted); *Aviles v. Charles Schwab & Co.*, 2011 WL 2938020, *3 (11th Cir. July 20, 2011) (similar).

### 2. *Arbitrator's Discovery Ruling Concerning Production of "Audit."*

The Thameses maintain that the Arbitrator violated § 10(a)(3) by refusing to order Woodmen to produce an "audit" showing "the total amount of loss by Wayne and Robert Thames and the date of those losses." (Doc. 17, at 2.) The threshold problem with this § 10(a)(3) argument is that the Thameses have offered no evidence that such an audit exists. From day one, Woodmen consistently, steadfastly denied that it had conducted such an audit. Both sides agree that the Arbitrator heard from the parties at length on this issue on multiple occasions, both before and during the hearing, including the Thameses' explanation for why they believed there must be such an audit and Woodmen's denial of the existence of same. (Hearing Transcript (doc. 1, Exh. A), at 356-59.) The Arbitrator ultimately accepted Woodmen's representation that no such audit exists. (Doc. 18, Exh. E, ¶ 5 ("The Respondent represents there are/were no pre-arbitration audits on the Claimants['] insurance accounts.").) Plaintiffs have come forward with no evidence that the Arbitrator's finding that the subject audit did not exist was erroneous, much less that said determination was made in bad faith or was so gross that it amounted to affirmative misconduct. All the Thameses have shown is that they disagree with the Arbitrator's decision. Under applicable law, such a contention falls well short of the high threshold necessary to support § 10(a)(3) relief on an arbitrator misconduct theory.

Even if the Court could conclude on this record that the Arbitrator erred in crediting Woodmen's representation that the requested audit is nonexistent, and even if the Court could conclude on this record that such an error was so egregious as to constitute affirmative misconduct, the Thameses still would not prevail under § 10(a)(3). As noted *supra*, that subsection allows for vacatur on misconduct grounds "only if the arbitrator's refusal to hear pertinent and material evidence prejudices the rights of the parties to the arbitration proceedings." *Rosensweig*, 494 F.3d at 1333 (citation omitted). Plaintiffs state that the evidentiary value of the supposed audit was that it "could show the true amount of Mr. Dees'

theft and Wayne and Robert Thames [*sic*] loss as well as the mechanics of Mr. Dees' scheme to defraud." (Doc. 17, at 3.) However, plaintiffs fail to show how this information might have made any material difference in the arbitration proceedings. To the extent plaintiffs would have used the audit to show the amount of loss, that kind of damages evidence would only come into play if the Arbitrator found for the Thameses on liability. He did not, so the "true amount" of the Thameses' loss (and, hence, the damages to which they would have been entitled had they prevailed on liability) was of no consequence. Nor does plaintiffs' cryptic reference to "the mechanics of Mr. Dees' scheme to defraud" suggest that production of the audit would have mattered one whit in the Arbitrator's liability findings. At issue in the case was not the mechanics of Dees' scheme, but whether Woodmen should be liable for it.[11] Plaintiffs identify nothing about the supposed audit that would reasonably have improved their position on liability.

In short, the Court readily concludes that plaintiffs' § 10(a)(3) claim for vacatur of the Award because the Arbitrator failed to require Woodmen to produce "an audit … showing the extent of Mr. Dees' theft" (doc. 17, at 2) is meritless. Plaintiffs have not shown that the Arbitrator's determination that no such audit existed was erroneous, much less that such a determination could possibly amount to affirmative misconduct by the Arbitrator, or that the Thameses were prejudiced in their rights to the arbitration proceedings as a result. All we have here is a simple disagreement by a litigant with an arbitrator's reasonable (albeit not unassailable) discovery ruling. That is not the stuff of a § 10(a)(3) violation.

### *3. Arbitrator's Purported Exclusion of Evidence of "Systematic Negligence, Negligent Supervision and Fraud."*

Alternatively, the Thameses seek vacatur of the Award under § 10(a)(3) on the ground that the Arbitrator "demonstrated misconduct in refusing to allow material evidence and testimony showing that Woodmen of the World has an extensive history of negligent hiring and supervision of its agents in Alabama." (Doc. 17, at 4.) Plaintiffs' Motion does not specify what

---

[11] Besides, by plaintiffs' own admission, even without the alleged audit, they "were able to identify seven hundred thousand dollars of misappropriated monies from more than twenty individuals which was funneled through Mr. Dees' personal bank account starting in 1992 and only ending when the plaintiffs informed Woodmen of the World of Mr. Dees' theft." (Doc. 17, at 3.) Plaintiffs' description of the information they did have strongly suggests that they were apprised of "the mechanics of Mr. Dees' scheme to defraud" even without the audit, such that introduction of that audit at the arbitration hearing would have been cumulative.

evidence was excluded, but merely cites to four pages of the hearing transcript (pages 13, 45, 414, 415), with no amplification. These pages reveal the following: (i) the Arbitrator overruled a defense objection to plaintiffs' questioning about a Woodmen agent named Glenn Morris and events dating back a quarter century (Hearing Transcript, at 13-14); (ii) when the defense objected to a question concerning Scott Dees' duties when Woodmen hired him, plaintiffs' counsel withdrew the question before the Arbitrator ruled on it (*id.* at 45-46); and (iii) the Arbitrator overruled a defense objection to plaintiffs' questioning Woodman's national field manager about whether "this same activity isn't going on all over the country" and allowed follow-up questions about Morris over defense objections (*id.* at 414-16). The point is this: Nowhere in the cited pages did the Arbitrator exclude evidence or testimony showing Woodmen's purported history of negligent hiring and supervision of agents. Without identification by plaintiffs of exactly what evidence was purportedly excluded by the Arbitrator, this challenge to the Award fails on its face.

Nor do plaintiffs improve their § 10(a)(3) argument by describing testimony that <u>was</u> allowed by the Arbitrator, then faulting the Arbitrator for "refus[ing] to give credence to said testimony and erroneously referr[ing] to the testimony as contradictory." (Doc. 17, at 4.) By its plain language, § 10(a)(3) applies to misconduct by an arbitrator "in refusing to hear evidence pertinent and material to the controversy," not in refusing to give such credence or weight to the evidence that the losing party believes it deserved. Plaintiffs have cited no authority – and the Court is aware of none – for the proposition that § 10(a)(3) may be used as a full-scale assault on an arbitrator's credibility determinations whenever the losing party disagrees with same.

Besides, even if plaintiffs had shown error by the Arbitrator in excluding evidence that Woodmen had a history of negligent hiring and supervision of its agents, vacatur of the Award under § 10(a)(3) would remain inappropriate because the Thameses still have not shown prejudice. According to plaintiffs, the purportedly wrongfully excluded evidence related to their claims of negligence, negligent supervision and fraud. The Award reflects that plaintiffs' negligence claims were denied on grounds of contributory negligence and untimeliness, and that plaintiffs' fraud claims were denied for want of reasonable reliance. Those fatal defects would have remained – and the resulting Award would have been unchanged – even if the evidence cited by the Thameses had been allowed.

For all of these reasons, the Court concludes that plaintiffs' 9 U.S.C. § 10(a)(3) challenge to the Award is both factually and legally unfounded.

### C. Section 10(a)(2) Review: Failure to Disclose Relationship with Counsel.

The other two grounds for relief presented in plaintiffs' Motion to Vacate allege that the Arbitrator was biased or corrupt in some way. In that regard, the Thameses maintain that the Arbitrator's evident partiality was manifested in his failure to disclose a relationship with Woodmen's attorneys, and in "disregarding and falsely labeling the evidence" at the hearing. (Doc. 17, at 7.) As set forth in the Motion to Vacate, plaintiffs' latter point turns on the Arbitrator's purported refusal to lend credence to evidence that Woodmen had breached a contractual duty owed to the Thameses.

#### 1. Section 10(a)(2) Legal Standard.

Under § 10(a)(2) of the FAA, vacatur of an arbitration award is permissible "where there was evident partiality or corruption in the arbitrators." 9 U.S.C. § 10(a)(2). "[T]he 'evident partiality' exception is to be strictly construed, as it must be if the federal policy favoring arbitration … is to be given full effect." *Gianelli Money Purchase Plan & Trust v. ADM Investor Services, Inc.*, 146 F.3d 1309, 1312 (11th Cir. 1998) (citation omitted). "Partiality as used in the FAA is synonymous with bias in favor of or against a party." *Aviles*, 2011 WL 2938020, at *3. "The alleged partiality must be direct, definite and capable of demonstration rather than remote, uncertain and speculative." *Gianelli*, 146 F.3d at 1312. Thus, under the law of this Circuit, "an arbitration award may be vacated due to the 'evident partiality' of an arbitrator only when either (1) an actual conflict exists, or (2) the arbitrator knows of, but fails to disclose, information which would lead a reasonable person to believe that a potential conflict exists." *Id.* (citation omitted); *see also Scott*, 141 F.3d at 1015 ("To vacate an arbitration award for evident partiality, the moving party must present evidence that would support a 'reasonable impression of partiality' on the arbitrator's behalf," that is "direct, definite and capable of demonstration rather than remote, uncertain and speculative.") (citations and internal quotation marks omitted); *Scandinavian Reinsurance Co. v. Saint Paul Fire and Marine Ins. Co.*, 668 F.3d 60, 73 (2nd Cir. 2012) ("where an undisclosed matter is not suggestive of bias, vacatur based upon that nondisclosure cannot be warranted under an evident-partiality theory").

### 2. *Arbitrator's Failure to Disclose Relationship with Counsel.*

The centerpiece of the Thameses' § 10(a)(2) objection is that "[t]he arbitrator failed to disclose a relationship with defendant's counsel." (Doc. 17, at 5.)[12] This allegation is devoid of factual support. Both of Woodmen's attorneys of record have filed declarations in which they unequivocally deny having ever met, spoken to, worked with, or dealt with the Arbitrator at any time before, or in any context other than, this matter.[13] Against defense counsel's unambiguous, comprehensive averments that they have had no interaction with the Arbitrator outside the boundaries of the *Thames v. Woodmen of the World* arbitration proceeding, plaintiffs present an unvarnished accusation (unsupported by record evidence) that as some point prior to the arbitration hearing, the Arbitrator stated, "I know that these attorneys, Archie Reeves and Walt Gilmer, are good, honest attorneys and if they claim there is no audit then there is no audit." (Doc. 17, at 5.) Even if plaintiffs' counsel's bare representation in a brief were sufficient to establish this fact, that quotation does <u>not</u> reveal any prior relationship between the Arbitrator and Woodmen's lawyers. On its face, the Arbitrator's purported comment is equally consistent with the notion that his impressions of Woodmen's attorneys were drawn from their actions in this case as it is with the theory that such impressions were culled from previous interactions outside the context of this matter. By all appearances, plaintiffs never followed up with the Arbitrator to request clarification of the basis for and meaning of that statement, although they were clearly on notice of it well in advance of the arbitration hearing. Such a "remote, uncertain, and speculative" charge of bias does not come close to meeting the legal standard for "evident partiality" under § 10(a)(2), and therefore cannot support vacatur of the Award.

---

[12] To the extent that plaintiffs reprise their § 10(a)(3) argument that the Arbitrator's bias is proven by his refusal to order Woodmen to produce the purported audit, that objection fails in the § 10(a)(2) context for the same reasons that it does in the § 10(a)(3) context. The Arbitrator's ruling against the Thameses on this discovery matter is in no way suggestive of misconduct, bias, evident partiality or corruption.

[13] Both declarations are identically worded as follows: "Prior to his appointment as the arbitrator in the above-referenced matter, I did not know Mr. Beckham and had never met him, spoken to him, worked with him, arbitrated before him, or had any dealings with him. I had no relationship with Mr. Beckham prior to the above-referenced arbitration matter, and I have never had any relationship with him other than as an attorney of record appearing before him as the arbitrator in the matter." (Gilmer Decl. (doc. 18, Exh. D), ¶ 3; Reeves Decl. (doc. 18, Exh. D), ¶ 3.)

Furthermore, even if the Court were blindly to accept plaintiffs' position that the Arbitrator had a prior relationship with Woodmen's lawyers (despite the lack of evidence to support that position, plaintiffs' failure to take reasonably available steps to develop an appropriate record during arbitration proceedings, and defendant's attorneys' declarations flatly denying such a relationship), plaintiffs would still not be entitled to relief. At most, plaintiffs have shown that the Arbitrator was sufficiently acquainted with Woodmen's lawyers that he believed them to be "good, honest attorneys." That does not come close to satisfying the "evident partiality or corruption" standard for vacatur under § 10(a)(2). Indeed, "standing alone, the fact that an arbitrator … had previous contacts with counsel for one of the parties does not suggest evident partiality." *University Commons-Urbana, Ltd. v. Universal Constructors Inc.*, 304 F.3d 1331, 1340 (11th Cir. 2002).[14] In a best-case scenario for plaintiffs, they have shown nothing more than "previous contacts." Absent facts or circumstances suggesting such previous contacts give rise to bias, financial linkages, ongoing business relations, or a significant compromising connection between the Arbitrator and Woodmen or its lawyers (none of which the Thameses have even hinted to be the case), there is no § 10(a)(2) violation.

### 3. *Arbitrator's Disregard or False Labeling of Evidence.*

Finally, the Thameses seek vacatur of the Award under § 10(a)(2) on the ground that the Arbitrator displayed evident partiality and corruption in "disregarding and falsely labeling the evidence." (Doc. 17, at 7.) As explanation for this allegation, plaintiffs submit a cursory paragraph citing an eight-page excerpt from the hearing transcript, disagreeing with the

---

[14] *See also Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 256 (3rd Cir. 2013) (to meet "evident partiality" standard, the FAA "requires more than suppositions based on mutual familiarity"); *Lagstein v. Certain Underwriters at Lloyd's, London*, 607 F.3d 634, 646 (9th Cir. 2010) ("Under the FAA, vacatur of an arbitration award is not required simply because an arbitrator failed to disclose a matter of some interest to a party," but only where the undisclosed information indicates that arbitrator "might reasonably be thought biased against one litigant and favorable to another") (citation omitted); *Positive Software Solutions, Inc. v. New Century Mortg. Corp.*, 476 F.3d 278, 282-83 (5th Cir. 2007) ("[N]ondisclosure alone does not require vacatur of an arbitral award for evident partiality. An arbitrator's failure to disclose must involve a significant compromising connection to the parties."); *Hodgson v. IAP Readiness Management Support*, 2010 WL 3943698, *5 (N.D. Fla. Sept. 20, 2010) (allegation that arbitrator was "acquainted" with defendant's attorney because their offices were in the same building does not suggest evident partiality and cannot justify vacatur).

Arbitrator's treatment of their breach of contract claims, and stating that the Arbitrator "refused to give credence to the evidence presented against Woodmen on these findings." (*Id.*)

Upon review of the cited pages, the Court cannot discern how the testimony therein establishes that Woodmen breached a contractual duty owed to the Thameses.[15] Even if such testimony did demonstrate a breach, the Arbitrator's purported "refus[al] to give credence" to such evidence does not constitute "evident partiality" under applicable law. Otherwise, a § 10(a)(2) vacatur could be had whenever the losing party disagreed with the arbitrator, or whenever a reviewing court believed the arbitrator "got it wrong." That is simply not the legal standard. *See, e.g., Taylor v. University of Phoenix/Apollo Group*, 2012 WL 3892837, *5 (5th Cir. Sept. 7, 2012) (arbitrator's purported mistake of fact or law does not constitute "evident partiality" under § 10(a)(2)); *Scandinavian Reinsurance*, 668 F.3d at 75 ("[w]e have repeatedly said that adverse rulings alone rarely evidence partiality"); *Thian Lok Tio v. Washington Hosp. Center*, 753 F. Supp.2d 9, 18 (D.D.C. 2010) ("Although a series of unfavorable rulings by the arbitrator may produce an appearance of bias in the eyes of the unsuccessful party, it does not justify vacating the arbitration award.").

Careful review of the cited pages of the hearing transcript, alongside the Award's treatment of the breach of contract claims, does not reveal any reason to believe that such award was infected by "evident partiality or corruption." The Arbitrator's ruling on the breach of contract claim evinces neither the existence of an actual conflict nor information which would lead a reasonable person to believe that a potential conflict exists, as required to constitute

---

[15] Pages 422 through 430 of the hearing transcript are focused on a Woodmen "cash receipt form" that has boxes to check for "initial remittance" and "renewal remittance" to field agents even though Woodmen discouraged field agents from handling cash and all premiums were ultimately to be sent to the home office. Although plaintiffs' counsel hammered away at the purported "contradiction" between the cash receipt form and Woodmen's cash-handling practices, the witness explained that the form "provides the opportunity for a field representative to provide additional service" to a policyholder. (Hearing Transcript, at 429.) Plaintiffs have never explained how the purported discrepancy amounts to a breach of contract between Woodmen and the Thameses, nor have they shown that Woodmen was somehow contractually obligated to prevent the Thameses from exercising what they admitted was poor judgment by making premium payments directly to the field representative, Scott Dees, rather than to the home office. The Court is aware of no contract requiring Woodmen to protect its clientele from their own bad decisions.

"evident partiality" under the *Gianelli* line of cases. Therefore, no § 10(a)(2) vacatur is warranted on this claim.

## III. Conclusion.

For all of the foregoing reasons, the plaintiffs' Motion to Alter, Amend or Vacate (doc. 17) is **denied** in its entirety because plaintiffs have not made an adequate showing that any of the four statutory grounds for vacatur of an arbitrator's award under the Federal Arbitration Act are satisfied here. Pursuant to 9 U.S.C. § 9, the undersigned will enter a separate Judgment confirming the Award. Because this Order and the accompanying Judgment resolve all claims for relief joined herein, the Clerk of Court is directed to close this case for administrative and statistical purposes.

DONE and ORDERED this 13th day of August, 2013.

s/ WILLIAM H. STEELE
CHIEF UNITED STATES DISTRICT JUDGE